UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BOBBY W. SILLAVAN, an individual, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. ) | CV 01-BU-803-S<br>**ENTERED**<br>JAN 1 4 2002 |

## Memorandum Opinion

Plaintiff Bobby W. Sillavan ("Sillavan") has brought the above-styled action pursuant to 26 U.S.C. § 6330(d), seeking a redetermination of the decision of an Appeals Officer that would allow the Internal Revenue Service ("IRS") to levy upon two individual retirement accounts ("IRAs") owned by Sillavan to satisfy a tax liability. Now before the Court are two motions. The first is one for summary judgment filed on November 30, 2001 by the Government (Doc. 14), in support of which the Government has filed evidence and a brief. The second is a motion filed by Sillavan on December 20, 2001 to stay these proceedings. (Doc.

1

17

16). Sillavan has attached his affidavit to this motion, which also constitutes Sillavan's response in opposition to the Government's motion for summary judgment. Upon consideration of the record and the arguments of counsel, the Court concludes that Sillavan's motion to stay is due to be **DENIED** and that the Government's motion for summary judgment is due to be **GRANTED**, as the Appeals Officer's decision is due to be **AFFIRMED**.

## I.  BACKGROUND

Sillavan, together with his brother owned Sillavan Lumber Company, Inc. (hereinafter "Sillavan Lumber"), a building supply business. Sillavan's brother was a CPA and the chief financial officer of Sillavan Lumber. In 1991, after Sillavan's brother suffered a debilitating stroke, Sillavan Lumber hired Phil Gray to act as its accountant. Gray was fired in the summer of 1999 after Sillavan discovered that Gray had converted certain funds of Sillavan Lumber for his personal use.

During the period that Gray was employed by Sillavan Lumber, the company's employee payroll taxes went unpaid. After Gray's departure, Sillavan Lumber continued its failure to remit payroll taxes for the third and fourth quarters of 1999. The IRS deemed Sillavan not to be a responsible party for the payroll taxes that

went unpaid by Sillavan Lumber during the period that Gray was in charge of the company's finances. However, the IRS assessed a trust fund recovery penalty ("TFRP") against Sillavan personally pursuant to § 6672 of the Internal Revenue Code, 26 U.S.C. § 6672 (2001),[1] for the trust fund portion of the payroll taxes that had not been paid for the third and fourth quarters of 1999.

An IRS Collections Officer met with Sillavan concerning the delinquent tax liability. Thereafter, on or about January 27, 2000, Sillavan transferred to his wife his interest in their residence. To the extent that Sillavan might possess an equitable interest in the residence, Sillavan pledged a mortgage upon it on July 17, 2000 to the law firm of Walston, Wells, Anderson & Bains, which represents Sillavan in his dealings with the IRS. On July 31, 2000, Sillavan consented to assessment and collection of the TFRP, in the amount of $74,133.67.

The IRS appears to have indicated to Sillavan that it was contemplating collection of his tax liability through a levy against two IRAs owned by him, which total approximately $82,600.

---

[1] 26 U.S.C. § 6672 provides in pertinent part: "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account and pay for and pay over such tax. . . shall, in addition to other penalties imposed by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

Pursuant to 26 U.S.C. § 6330(a) (2001), the IRS sent a Final Notice to Sillavan dated November 21, 2000, advising him that the TFRP liability would be collected by levy if payment was not received, alternative payment arrangements were not made, or a Collection Due Process Hearing was not requested. Sillavan timely requested a Collection Due Process Hearing to contest the propriety of the IRS levying against his IRAs, which constitute his only remaining savings.

Meanwhile, on December 6, 2000, the IRS filed Notices of Federal Tax Lien against the property of Sillavan's wife, naming her as her husband's nominee.[2] These notices specifically state that they encumber the residence in which Sillavan conveyed his interest to his wife. This nominee lien secures the TFRP assessed against Sillavan.

A Collection Due Process Hearing was held with Appeals Officer Dan Shirah, pursuant to 26 U.S.C. § 6330(b). Subsequently, by a letter dated March 2001, the Appeals Officer notified Sillavan that his appeal was rejected and that the IRS may issue a Notice of Levy

---

[2]Under 26 U.S.C. § 6321, the IRS is authorized to file liens against property in the hands of a third party that is the nominee or 'alter ego' of a delinquent taxpayer and also to levy against such property. See G.M. Leasing v. United States, 429 U.S. 338, 350-351 (1977); United States v. Reid, 127 F.Supp. 2d 1361, 1382 n.41 (S.D. Ga. 2000); Baldassari v. United States, 79 Cal. App. 3d 267, 270, 144 Cal.Rptr. 741, 742 (1978).

on Sillavan's IRAs to the extent of the balance due on the TFRP for the third and fourth quarters of 1999. The Appeals Officer stated that he had considered several proposed alternatives to the levy against the IRA, but he concluded that none of these were appropriate. Specifically, the Appeals Officer noted that Sillavan had represented that he had no other assets aside from the IRAs and whatever interest he retained in his personal residence and thus could not post a bond or substitute other assets. The Appeals Officer also rejected the propriety of an installment agreement because Sillavan's Collection Information Statement, Form 433-A, indicated that he was earning only $1,000 per month while his necessary living expenses exceeded $1,600 per month. And because Sillavan still had assets that exceeded his tax liability, the Appeals Officer determined that an offer-in-compromise was not a suitable option. Finally, the Appeals Officer stated as follows:

> The taxpayer is liable for the Trust Fund Recovery Penalty in accordance with the law. The taxpayer's IRA's are the only remaining assets that are clearly in the taxpayer's name with unclouded title. Appeals believes that waiting for the taxpayer's current business to be successful or to wait for the sale of the taxpayer's residence are not in the interest of efficient collection.

On March 30, 2001, Sillavan initiated this action by filing a complaint seeking a redetermination of the Appeals Officer's

decision, pursuant to 26 U.S.C. § 6330(d)(1). In his amended complaint filed June 13, 2001, Sillavan requests, in pertinent part, that the Court reverse the decision of the IRS to levy upon his IRA[3] and allow Sillavan to propose an installment agreement based upon future anticipated income from his current business operations. The Government has now moved for summary judgment pursuant to Fed. R. Civ. P. 56,[4] while Sillavan has moved for a stay of the proceedings for up to one year while he and his wife attempt to sell the residence they occupy, the proceeds of which, Sillavan claims, will be used to satisfy his liability.

## II. JURISDICTION[5]

---

[3]Sillavan has also requested that the Court "release any levy that occurs and reinstate the IRA." Amended Complaint at 5. However, there is no indication that the IRS has actually executed a levy upon Sillavan's property. Indeed, any levy action generally is suspended during the pendency of a Collection Due Process Hearing and appeal. 26 U.S.C. § 6330(e)(1).

[4]Some courts have noted that Rule 56 is not an appropriate procedural device to trigger a district court decision in a case where it is asked to review an administrative agency's determination because the district court, in reviewing the administrative record, whether additional evidence is taken or not, must weigh and decide disputed issues of fact. See Walker County School Dist. v. Bennett ex rel. Bennett, 203 F.3d 1293, 1297 n.11 (11th Cir. 2000); MRCA Information Services v. United States, 145 F.Supp.2d 194, 195 n.3 (D. Conn. 2000). However, the applicability of summary judgment standards in such cases appears to be an open one in this circuit, Walker County School Dist., supra. However, the parties have not raised the issue, and the Court concludes that the result in this case would not be altered either way. Therefore, the Court will not attempt to resolve the question here.

[5]Although not raised by either party in this case, the Court has an obligation to inquire into subject matter jurisdiction sua sponte whenever it may be lacking. University of South Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

Judicial review of an Appeals Officer's determination under 26 U.S.C. § 6330 that the IRS may levy property to satisfy an outstanding federal tax obligation is proper in the district courts only if the Tax Court lacks jurisdiction over the underlying tax liability. 26 U.S.C. § 6330(d)(1)(A) & (B); True v. Commissioner of Internal Revenue, 108 F. Supp. 2d 1361, 1364 (M.D. Fla. 2000); Diefenbaugh v. Weiss, 234 F.3d 1267 (table), 2000 WL 1679510, **2 (6th Cir. 2000). The underlying tax liability ascribed to Sillavan in this case is based upon the TFRP imposed pursuant to 26 U.S.C. § 6672. The Tax Court has expressly held that it lacks jurisdiction to consider liability for the penalty tax imposed under that section. Medeiros v. Commissioner of Internal Revenue, 77 T.C. 1255, 1259-1260, 1981 WL 11307 (1981). That same court has also held that it lacks jurisdiction to consider an appeal under § 6330(d)(1)(A) where the underlying tax liability has been imposed pursuant to § 6672. Moore v. Commission of Internal Revenue, 114 T.C. 171, 176 (2000). Thus, this Court is satisfied that it possesses jurisdiction to hear Sillavan's appeal under § 6330(d)(1)(B). See, e.g., Konkel v. Commissioner of Internal Revenue, 2000 WL 1819417 n.1 (M.D. Fla. 2000); MRCA Information Services v. United States, 145 F. Supp. 2d 194 (D. Conn. 2000).

III. REVIEW STANDARDS

While Section 6330(d) clearly provides for judicial review of the IRS's administrative determinations, the statute is silent with respect to the standard of review that the reviewing court must apply. However, upon examining the legislative history, courts agree unanimously upon the review standards to be employed: Where the validity of the underlying tax liability was properly at issue in the Collection Due Process Hearing and is properly raised in the judicial forum, the court is to review the existence and amount of underlying tax liability de novo; where the validity of the tax liability is not properly part of the appeal, however, the appeals officer's determination as to the appropriateness of the collection activity will be reviewed only for an abuse of discretion. See, e.g., MRCA Information Services, 145 F. Supp. 2d at 199, citing H. Rep. No. 105-599 at 266 (1998); Konkel v. Commission of Internal Revenue, 2000 WL 1819417, *3 (M.D. Fla. 2000); Goza v. Commissioner of Internal Revenue, 114 T.C. 176, 181-182 (2000); Geller v. United States, 2001 WL 1346669, *3 (S.D. Ohio 2001); Pikover v. United States, 2001 WL 1346670, *3 (C.D. Cal. 2001).

26 U.S.C. § 6330(c)(2)(B) provides that a taxpayer may only raise issues regarding the existence or amount of an underlying tax liability at the Collection Due Process Hearing if the taxpayer "did not receive any statutory notice of deficiency for such tax

liability or did not otherwise have an opportunity to dispute such tax liability." See Fossen v. Commissioner of Internal Revenue, 4 Fed. Appx. 526, 526, 2001 WL 180503, **1 (9th Cir. 2001); Konkel, 2000 WL 1819417 at *3-*4. Further, if a party appealing a § 6330 IRS determination does not allege that he did not receive a notice of deficiency, or that he did not have an opportunity to contest the deficiency determinations, the party's underlying tax liability is not properly before the court, and the court's standard of review is limited to an abuse of agency discretion. Jon H. Berkey, P.C. v. Department of the Treasury, 2001 WL 1397680, *3 (E.D. Mich. 2001), citing Davis v. Commissioner of Internal Revenue, 115 T.C. 35, 39 (2000).

The Appeals Officer's decision in this case states that Sillavan's underlying liability for the TFRP was discussed at the hearing and that he had accepted responsibility for such liability. The Appeals Officer also acknowledged that Sillavan had signed the waiver of assessment regarding the TFRP on July 30, 2000 and had not pursued his appeal rights. Further, Sillavan has not alleged in this Court, nor does it otherwise appear from the record, that Sillavan did not receive the proper statutory notice of deficiency for his liability for the TFRP under § 6672 or that he did not otherwise have an opportunity to dispute such tax liability.

Therefore, Sillavan's underlying tax liability for the TFRP is not before this Court. Thus, the only issue presented is the propriety of the Appeals Officer's determination that the IRS may levy Sillavan's IRAs to satisfy his outstanding TFRP liability, which is reviewed only for an abuse of discretion.

The Eleventh Circuit has observed that an "abuse of discretion" standard of review recognizes that for the matter in question there is a range of permissible choice for the decision-maker below. See McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001). So long as the decision under consideration does not amount to a clear error of judgment, a reviewing court may not reverse just because it would have gone the other way had the choice been its to make. Id.

## IV. DISCUSSION

Sillavan asserts that the Appeals Officer abused his discretion in determining that the IRS may levy Sillavan's IRAs to the extent of the balance due on the TFRP. In support of his claim, Sillavan proposes two alternative methods of collection that should have been implemented instead of allowing a levy upon his IRAs. First, Sillavan suggests that the IRS should have been required to enter into an installment agreement, whereby he could satisfy his tax liability "based upon future anticipated income

from his current business operations." Amended Complaint at 5. And second, he seems to argue that the IRS should have been required to wait until he sells the residence he occupies with his wife and to apply the sale proceeds to his tax liability. The Court addresses these alternative collection action proposals in turn.

### A.   Installment Agreement

26 U.S.C. § 6159 and 26 C.F.R. § 301.6159-1 authorize the IRS to enter into installment agreements to satisfy a federal tax liability. Indeed, in certain circumstances, the IRS is statutorily required to allow a taxpayer to enter into such an agreement. See 26 U.S.C. § 6159(c). However, the IRS is not required by the statute to do so here because, perhaps among other reasons, Sillavan's liability is not for income taxes arising under Subtitle A of the Internal Revenue Code, and the aggregate amount of his liability exceeds $10,000. See 26 U.S.C. § 6159(c)(1).

The Collection Information Statement Sillavan signed and that was before the Appeals Officer indicated that Sillavan's IRAs were valued at an amount that would satisfy his entire outstanding tax liability immediately and that he retained no other assets besides those accounts and whatever interest he might retain in the residence after he purported to transfer his interest to his wife.

Sillavan further stated on the Collection Information Statement that he was earning only $1,000 per month, an amount which was exceeded by his necessary monthly living expenses by about $600. Besides vague allusions to "future anticipated income" from the small gardening center business owned by his wife that he is operating, Sillavan offered no hint as to how he might have been able to make any kind of substantial installment payments to the IRS at the time his case was reviewed by the Appeals Officer. Indeed, he has still not offered any evidence in this Court tending to explain how he plans to do so at this point. In a Collection Due Process Hearing, the Appeals Officer is required to consider whether a "proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3)(C). Nonetheless, Sillavan is simply not entitled to have the IRS forebear from levying his savings, which will satisfy his outstanding tax obligation, based upon a highly uncertain wager that he may at some time in the future be able to earn substantial income from his business dealings. The Court concludes that, under the circumstances, the Appeals Officer did not abuse his discretion in rejecting Sillavan's proposal that he be allowed to satisfy his tax liability

through an installment agreement as an alternative to levy. See Kitchen Cabinets, Inc. v. United States, 2001 WL 237384, *2 (N.D. Tex. 2001).

### B. Sale of the Residence

Sillavan also proposes that the IRS should not be allowed to levy his IRAs, and that this litigation should also be stayed, because he will, he claims, be able to satisfy his tax obligation out of his portion of the proceeds once the residence he shares with his wife is ultimately sold. In his affidavit dated December 20, 2001, Sillavan states that the residence is listed at $529,000 and that it is still on the market, as it appears to have been at the time the Appeals Officer rendered his decision in March 2001. Sillavan alleges that a prospective buyer had recently signed a contract for the purchase of the residence for $455,000, but that the deal fell through when the prospective buyer could not obtain financing. Sillavan also attributes the difficulties in selling the residence to a "drivit problem."[6] Sillavan Aff. at ¶ 5.

The fundamental difficulty with Sillavan's position, as the Court sees it, is that it was unclear at the time of the Appeals Officer's determination, and, indeed, it remains unclear, what

---

[6] "Drivit" is a type of synthetic plaster. See F. Richard Wilton, Jr., Inc. v. Gibson, 22 Va. App. 606, 608 n.1, 471 S.E.2d 832, 833 n.1 (1996).

stake, if any, Sillavan retained or retains in the residence. Because he transferred his full legal interest in the residence to his wife, there is no guarantee that he will actually be entitled to any of the proceeds of an eventual sale. Sillavan argues in his brief that the "IRS is adequately protected for at least another year as sales efforts are ongoing." It is unclear what Sillavan means by this statement, although presumably it relates to the fact that the IRS filed a lien against his wife's property, including the residence, as his nominee. However, that lien or a subsequent levy pursuant thereto against the residence or assets of a sale still could be subject to legal challenge by Sillavan's wife if she were to assert that the transfer of Sillavan's interest in the property to her was bona fide and that she was thus not his nominee. See 26 U.S.C. § 7426; Scoville v. United States, 250 F.3d 1198 (8th Cir. 2001); Oxford Capital Corp. v. United States, 211 F.3d 280 (5th Cir. 2000).

Further, Sillavan acknowledges that the transfer of his interest to his wife occurred while his creditors, including the IRS, were attempting to collect various debts he owed. Nonetheless, he claims that the transfer was not done to avoid his

creditors but rather to protect his wife's interests.[7] But as the Government argues, the transfer of Sillavan's interest to his wife under such highly questionable circumstances likely creates a cloud on the title of the residence and would make a sale more difficult and depress its market value. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 8 n.3.

But even more to the point, as the Appeals Officer recognized, because Sillavan transferred his legal interest in the residence to his wife, his IRAs were the only remaining assets that were clearly in his name with unclouded title. In fact, the Appeals Officer's decision indicates that he actually discussed with Sillavan the possibility of having his wife sign an agreement that would give the government the right to secure the payment of Sillavan's tax obligation from the proceeds of the sale of their personal residence, but Sillavan responded that he was not sure that he could get his wife to sign such an agreement. Thus, the Appeals Officer had to consider that the IRS was attempting to levy the only assets clearly in Sillavan's name, which were sufficient to satisfy immediately his entire tax delinquency, as well as the substantial uncertainties inherent in awaiting the sale of the

---

[7] It is questionable whether such constitutes a distinction without a difference.

residence. These included (1) the validity of its nominee lien relating to Sillavan's wife; (2) when the residence might be sold; (3) whether Sillavan would actually be entitled to any of the proceeds of a sale given the transfer of his interest to his wife; and (4) whether the portion to which Sillavan might be entitled, if any, would satisfy his tax liability.[8] Given these factors, the Court concludes that the Appeals Officer did not abuse his discretion in finding that waiting for the sale of the residence was not in the interest of the efficient collection of taxes and that levying against Sillvan's IRAs was an appropriate method of collecting his liability for the TFRP. Because the Appeals Officer's decision is due to be affirmed and the Government is entitled to a judgment, the Court finds that Sillavan is not entitled to a stay pending the sale of the residence.

V. CONCLUSION

Based upon the foregoing, the Court concludes that the Appeals Officer's decision is due to be **AFFIRMED**, as he did not abuse his discretion in determining that the IRS may levy upon the IRAs owned by Sillavan to the extent of the balance due on his outstanding

---

[8]This final uncertainty was exacerbated by the fact that Sillavan had also executed a mortgage on the residence in favor of his lawyers to the extent he retained some equitable interest in the residence.

liability for the TFRP for the third and fourth quarters of 1999. Accordingly, the Government's motion for summary judgment (Doc. 14) is due to be **GRANTED**, while Sillavan's motion to stay these proceedings (Doc. 16) is due to be **DENIED**. This action is due to be **DISMISSED** with prejudice. A separate order will be entered.

**IT IS SO ORDERED**, this 11th day of January, 2002.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE